# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| CHRISTOPHER GRIGGS, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CROWN CASTLE INTERNATIONAL CORP., JAY A. BROWN and DANIEL K. SCHLANGER,<br><br>Defendants. | Case No.  4:20-cv-843<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Jury Trial Demanded |

Plaintiff Christopher Griggs ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Crown Castle International Corp. ("CCI" or the "Company") common stock between February 26, 2018 and February 26, 2020, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.      CCI is a real estate investment trust ("REIT"), which owns, operates and leases shared wireless infrastructure throughout the United States and Puerto Rico. As of December 31, 2016, it purported to own approximately 40,000 cell towers and other cell communication structures, and approximately 26,500 route miles of fiber.

3.      CCI has reported strong financial performance in the last few years, driven by almost uninterrupted year-over-year increases in key financial metrics, such as net income, adjusted EBITDA, and adjusted funds from operations. This made it a favorite for investors seeking exposure to the telecommunications market—as the Company's common stock steadily climbed from about $100 per share in April 2018 to over $155 per share in early 2020.

4.      Then, on February 26, 2020, the Company shocked investors, disclosing that its historical accounting practice for tower installation services was not acceptable under generally accepted accounting rules, forcing the Company to restate its "financial statements for the years ended December 31, 2018 and 2017, and unaudited financial information for the quarterly and year-to-date periods in the year ended December 31, 2018 and for the first three quarters in the year ended December 31, 2019."

5.      On this news, CCI's stock price fell $14.29 per share, or 8.8%, on February 27, 2020.

6.      Defendants were motivated to and did conceal the true operational and financial condition of CCI, either intentionally or through indifference. Doing so enabled Defendants to deceive the investing public regarding CCI's business, operations, management, and the intrinsic value of CCI's common stock, causing the Plaintiff and other members of the Class to purchase CCI common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, defendants, jointly and individually took the actions set forth herein.

## JURISDICTION AND VENUE

7.    The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.    This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

11.    In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.    Plaintiff Christopher Griggs is a resident of Princeton, Indiana. He acquired and held shares of CCI at artificially inflated prices during the class period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

13.    Defendant CCI is a Delaware corporation with its principal corporate offices based in Houston, Texas. The Company's common stock trades on the New York Stock Exchange under the ticker CCI. According to CCI's website, the Company is "the nation's

largest provider of shared communications infrastructure, [ ] working to connect cities and businesses to the data, technology, and wireless services they rely on every day."

14.    Defendant Jay A. Brown ("Brown") was appointed President and Chief Executive Officer ("CEO") of CCI in June 2016. Brown was CCI's Chief Financial Officer from July 2008 to May 2016. Before that, Brown served as Treasurer of CCI starting in May 2004.

15.    Defendant Daniel K. Schlanger ("Schlanger") joined CCI in April 2016 as Senior Vice President and Chief Financial Officer ("CFO"). Schlanger previously served as Senior Vice President and Chief Financial Officer of Exterran GP LLC and the general partner of Exterran Partners, L.P., from June 2006 through March 2009.

16.    Collectively, Brown and Schlanger are referred to throughout this complaint as the "Individual Defendants."

17.    The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their position with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.    CCI owns, operates and leases shared communications infrastructure throughout the U.S., including approximately 40,000 cell towers and other structures aiding cellular communications (collectively, "Cell Towers"). The Company's core business model is to purchase strategic land and Cell Towers either by direct purchase or acquisitions.

19.    CCI has been operating as a real estate investment trust (REIT) since 2014. According to a Company press release, the conversion to a REIT was based upon tax considerations and the belief that it was "the optimal structure for our business given the real estate nature of our assets," and it would lower CCI's weighted average cost of capital and provide "additional opportunities for creating long-term shareholder value."

### Materially False and Misleading Statements

20.    On February 26, 2018, CCI filed its financial report for the fourth quarter and year end for 2017 on Form 10-K with the SEC. The Company reported a strong financial performance, with net income for the year at $445 million and adjusted EBITDA of $2.48 billion. Adjusted funds from operations ("AFFO") were reported at $1.86 billion for the year.

21.    In a press release announcing financial results for Q4 and year end 2017, Defendant Brown advised investors that:

> Our solid full year 2017 results and increased Outlook for 2018 reflect the strong fundamentals across our business as we remain focused on consistently delivering value to our customers and shareholders.

22.    The statements described above were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. As discussed below, the Defendants misled investors by reporting net income, adjusted EBITDA

and AFFO without disclosing that these metrics were artificially inflated through misapplication of accounting rules.

23.     The Company's report for fourth quarter and year ended 2017 also attested to the effectiveness of CCI's controls and procedures, stating:

> Management has assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2017. Based on the Company's assessment, management has concluded that the Company's internal control over financial reporting was effective as of December 31, 2017 to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with U.S. generally accepted accounting principles. Our evaluation of internal control over financial reporting excluded the internal controls over total assets of $3.1 billion and total revenue of $314 million included in our results as of and for the year ended December 31, 2017 related to the operations of FiberNet, Wilcon and Lightower, which we acquired on January 17, 2017, June 26, 2017 and November 1, 2017, respectively …. This exclusion is in accordance with the SEC's general guidance that an assessment of the effectiveness of internal control over financial reporting of a recently acquired business may be omitted from management's scope in the year of acquisition.

24.     The report contained certifications signed by Defendants Brown and Schlanger attesting to the accuracy and completeness of the Company's financial and operational reports, which state:

**Certification**

1.     I have reviewed this Quarterly Report on Form 10-K of Crown Castle International Corp.;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in

Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared:

(b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for the external purposes in accordance with generally accepted accounting principles:

(c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's first fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and to the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)    Any fraud, whether or not material, that involves management or other employees who have significant role in the registrant's internal control over financial reporting.

25.    The above-described statements were false and misled investors to believe that CCI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q4 and year end 2017 was not accurate or reliable.

26.     On May 4, 2018, CCI filed its financial report for the first quarter of 2018 with the SEC on Form 10-Q. The Company reported a strong quarter with net income of $114 million, adjusted EBITDA of $763 million and AFFO of $558 million. In a press release announcing Q1 2018 financial results, Defendant Brown advised investors that:

> After another quarter of very good financial and operating performance in the first quarter, we remain excited about the opportunities for our business to support growing data demand in the U.S. …. We continue to see tremendous activity across our unique portfolio of infrastructure assets. In our tower business, we have recently signed comprehensive leasing agreements with several of our largest customers, which we believe signals the beginning of a sustained period of infrastructure investments by our customers.

27.     The statements described above were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. As discussed below, the Defendants misled investors by reporting net income, adjusted EBITDA and AFFO without disclosing that these metrics were artificially inflated through misapplication of accounting rules.

28.     In addition, the Company's Q1 for 2018 attested to the effectiveness of CCI's disclosure controls and procedures, and contained certifications by Defendants Brown and Schlanger which, attested to the sufficiency of the Company's controls and procedures – as well as, the completeness and veracity of CCI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q4 and year ended 2017, discussed supra at ¶¶ 23-24.

29.     These statements were false and misled investors to believe that CCI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q1 2018 was not accurate or reliable.

30.     On August 6, 2018, CCI filed its financial report for the second quarter of 2018

with the SEC on Form 10-Q. The Company reported a strong quarter with net income of $180 million, compared to $112 million during the same period in 2017. Adjusted EBITDA was reported at $769 million and AFFO was $546 million. In a press release announcing the Q2 2018 results, Defendant Brown advised investors that:

> We delivered another terrific quarter of results, and remain on track to generate attractive growth in cash flows and dividends per share for the full year 2018 …. Over the past two decades, we have built and acquired an unmatched portfolio of more than 40,000 towers and 60,000 route miles of dense, high capacity fiber in the top U.S. markets, where we see the greatest long-term demand from multiple customers.

31.    The statements described above were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. As discussed below, the Defendants misled investors by reporting net income, adjusted EBITDA and AFFO without disclosing that these metrics were artificially inflated through misapplication of accounting rules.

32.    In addition, the Company's Q2 for 2018 attested to the effectiveness of CCI's disclosure controls and procedures, and contained certifications by Defendants Brown and Schlanger which attested to the sufficiency of the Company's controls and procedures – as well as the completeness and veracity of CCI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q4 and year end 2017, discussed supra at ¶¶ 23-24.

33.    These statements were false and misled investors to believe that CCI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q2 2018 was not accurate or reliable.

34.    On November 5, 2018, CCI filed its financial report for the third quarter of 2018 with the SEC on Form 10-Q. The Company reported net income of $164 million, adjusted

EBITDA of $793 million and AFFO of $579 million. In a press release announcing the Q3 2018

results, Defendant Brown advised investors that:

> We delivered terrific results in the third quarter and increased our annualized common stock dividend by 7% to $4.50 per share based on accelerating leasing activity .... Over the past two decades, we have built and acquired an unmatched portfolio of more than 40,000 towers and 65,000 route miles of dense, high capacity fiber in the top U.S. market

35.     The statements described above were materially false and misleading and failed

to disclose material adverse facts about the Company's business, operations, and prospects. As

discussed below, the Defendants misled investors by reporting net income, adjusted EBITDA

and AFFO without disclosing that these metrics were artificially inflated through misapplication

of accounting rules.

36.     In addition, the Company's Q3 for 2018 attested to the effectiveness of CCI's

disclosure controls and procedures, and contained certifications by Defendants Brown and

Schlanger which attested to the sufficiency of the Company's controls and procedures – as well

as the completeness and veracity of CCI's disclosures and reports. These representations were

substantially similar or the same as those statements contained in the Company's financial report

for Q4 and year end 2017, discussed supra at ¶¶ 23-24.

37.     These statements were false and misled investors to believe that CCI had adequate

systems of internal disclosure and financial controls, when no such controls existed. As such, the

Company's financial report for Q3 2018 was not accurate or reliable.

38.     On February 25, 2019, CCI filed its financial report for the fourth quarter and

year end 2018 with the SEC on Form 10-K. The Company reported $671 million in net income

for the year, as well as $3.14 billion in adjusted EBITDA and $2.27 billion in AFFO on an annual

basis. In a press release announcing Q4 and year end 2018 financial results, Defendant Brown

advised investors that:

> We closed out another year of growth with solid results in the fourth quarter and increased our Outlook for 2019, demonstrating the strong fundamentals across our business. We are excited about the opportunity we see to leverage the unmatched portfolio of more than 40,000 towers and 65,000 route miles of dense, high capacity fiber that we have built and acquired over the past two decades in the top U.S. markets.

39.    The statements described above were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. As discussed below, the Defendants misled investors by reporting net income, adjusted EBITDA and AFFO without disclosing that these metrics were artificially inflated through misapplication of accounting rules.

40.    In addition, the Company's 10-K for 2018 attested to the effectiveness of CCI's disclosure controls and procedures, and contained certifications by Defendants Brown and Schlanger which attested to the sufficiency of the Company's controls and procedures – as well as the completeness and veracity of CCI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q4 and year end 2017, discussed supra at ¶¶ 23-24.

41.    These statements were false and misled investors to believe that CCI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q4 and year end 2018 was not accurate or reliable.

42.    On May 3, 2019, CCI filed its financial report for the first quarter of 2019 with the SEC on Form 10-Q. The Company announced that net income for the quarter was $210 million, compared to $114 million during the same period a year ago. Adjusted EBITDA and AFFO was reported as $821 million and $606 million, respectively. In a press release announcing Q1 2019 results, Defendant Brown advised investors that:

> In the first quarter, we delivered solid results that were in line with our expectations, positioning us well to generate attractive growth in cash flows and dividends per

share for the full year 2019 …. This continued growth reflects the strong fundamentals we see across our business, including our major customers spending to improve their current networks while beginning to invest in 5G.

43.    The statements described above were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. As discussed below, the Defendants misled investors by reporting net income, adjusted EBITDA and AFFO without disclosing that these metrics were artificially inflated through misapplication of accounting rules.

44.    In addition, the Company's report for Q1 2019 attested to the effectiveness of CCI's disclosure controls and procedures, and contained certifications by Defendants Brown and Schlanger which attested to the sufficiency of the Company's controls and procedures – as well as the completeness and veracity of CCI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q4 and year end 2017, discussed supra at ¶¶ 23-24.

45.    These statements were false and misled investors to believe that CCI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q1 2019 was not accurate or reliable.

46.    On July 31, 2019, CCI filed its financial report for the second quarter of 2019 with the SEC on Form 10-Q. The Company reported net income for the second quarter 2019 was $246 million, compared to $180 million during the same period a year ago. Adjusted EBITDA was reported as $857 million and AFFO was $619 million. In a press release announcing Q2 2019 results, Defendant Brown advised investors that:

We delivered terrific results in the second quarter that exceeded our expectations and reflect the strong demand for our unmatched portfolio of towers, small cells and fiber assets …. We believe our ability to offer towers, small cells and fiber solutions, which are all integral components of communications networks and are

shared among multiple tenants, provides us the best opportunity to generate significant growth while delivering high returns for our shareholders.

47.     The statements described above were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. As discussed below, the Defendants misled investors by reporting net income, adjusted EBITDA and AFFO without disclosing that these metrics were artificially inflated through misapplication of accounting rules.

48.     In addition, the Company's Q2 for 2019 attested to the effectiveness of CCI's disclosure controls and procedures, and contained certifications by Defendants Brown and Schlanger which attested to the sufficiency of the Company's controls and procedures – as well as the completeness and veracity of CCI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q4 and year end 2017, discussed supra at ¶¶ 23-24.

49.     These statements were false and misled investors to believe that CCI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q2 2019 was not accurate or reliable.

50.     On October 16, 2019, CCI announced that it had received a subpoena from the SEC requesting certain documents from 2015 through the present, primarily related to the Company's long-standing capitalization and expense policies for tenant upgrades and installations in its services business. According to the CCI, prior to receiving this subpoena the Company had provided information to the SEC related to certain services-related transactions.

51.     On November 4, 2019, CCI filed its financial report for the third quarter of 2019 with the SEC on Form 10-Q. The Company reported net income of $272 million, compared to $164 million during the same period a year ago. Adjusted EBITDA was reported as $852 million

and AFFO was $646 million. In a press release announcing the results, Defendant Brown advised investors that:

> We delivered terrific results in the third quarter and increased our annualized common stock dividend by 7% to $4.80 per share …. We believe our ability to offer towers, small cells and fiber solutions, which are all integral components of communications networks and are shared among multiple tenants, provides us the best opportunity to generate significant growth while delivering high returns for our shareholders.

52.     The statements described above were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. As discussed below, the Defendants misled investors by reporting net income, adjusted EBITDA and AFFO without disclosing that these metrics were artificially inflated through misapplication of accounting rules.

53.     In addition, the Company's Q3 for 2019 attested to the effectiveness of CCI's disclosure controls and procedures, and contained certifications by Defendants Brown and Schlanger which attested to the sufficiency of the Company's controls and procedures – as well as the completeness and veracity of CCI's disclosures and reports. These representations were substantially similar or the same as those statements contained in the Company's financial report for Q4 and year end 2017, discussed supra at ¶¶ 23-24.

54.     These statements were false and misled investors to believe that CCI had adequate systems of internal disclosure and financial controls, when no such controls existed. As such, the Company's financial report for Q3 2019 was not accurate or reliable.

***The Truth Emerges***

55.     On February 26, 2020, CCI issued a press release disclosing that the Company had been accounting for certain revenues in a manner not compliant with Generally Acceptable

Accounting Principles ("GAAP") – forcing it to restate prior financials. Specifically, the Company

stated:

> Our long-standing historical practice with respect to services revenues had been to recognize the entirety of the transaction price from our tower installation services as services revenues upon the completion of the installation services. After consultation with the [SEC's Office of the Chief Accountant], **we concluded that our historical practice was not acceptable under GAAP.**
>
> \*       \*       \*
>
> Instead, a portion of the transaction price for our installation services, specifically the amounts associated with permanent improvements recorded as fixed assets, represents a modification to the leases to which the services work is related and, therefore, should be recognized on a ratable basis as site rental revenues over the associated estimated remaining lease term.
>
> \*       \*       \*
>
> Due to the identified errors described above, we **will restate our financial statements for the years ended December 31, 2018 and 2017, and unaudited financial information for the quarterly and year-to-date periods in the year ended December 31, 2018 and for the first three quarters in the year ended December 31, 2019.** Restated financial statements and financial information for the periods in question will be reflected in Crown Castle's Annual Report on Form 10-K for the year ended December 31, 2019 ("2019 10-K"), which Crown Castle expects to file within the prescribed timeline for such report, including any available extension if needed to finalize the consolidated financial statements and disclosures and complete the associated audit work.

56.     According to the Company, the preliminary impact of these restatements "to each of net income, adjusted EBITDA and AFFO is a decrease of approximately $100 million for full year 2019 actuals and a decrease of approximately $90 million to our Previous 2020 Outlook."

57.     On this news, shares of CCI common stock fell $14.29 per share, or over 8.8% in a single day of trading, damaging investors.

58.     As a result of Defendants' wrongful acts and omissions, Plaintiff and other class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired CCI common stock between February 26, 2018 and February 26, 2020, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

60.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

61.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a.   Whether the Exchange Act was violated by Defendants;

b.   Whether Defendants omitted and/or misrepresented material facts;

c.   Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d.   Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.   Whether the price of the Company's stock was artificially inflated; and

f.   The extent of damage sustained by Class members and the appropriate measure of damages.

62.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

63.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

64.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

65.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things states:

a.    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.    The omissions and misrepresentations were material;

c.    The Company's common stock traded in efficient markets;

d.    The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e.    Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

66.    At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as, communications with the financial press, securities analysts, and other similar reporting services.

Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

67.     The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

68.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

69.     On February 26, 2020, CCI issued a press release disclosing that the Company had been accounting for certain revenues in a manner not compliant with Generally Acceptable Accounting Principles ("GAAP") – forcing it to restate prior financials. As a result, CCI common stock fell $14.38 per share, or over 8.8% in a single day of trading, damaging investors.

70.     These revelations of accounting improprieties contradicted statements made by Defendants during the Class Period and were a causal element of the concurrent decline in the Company's share price.

## CAUSES OF ACTION

### Count One
### Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against CCI and the Individual Defendants)

71.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

72.     During the Class Period, Defendants CCI and the Individual Defendants disseminated or approved the false statements specified above, which they knew or deliberately

disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

73.    Defendants CCI and the Individual Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

74.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## Count Two
### Violation of § 20(a) of the Exchange Act
### (Against the Individual Defendants)

75.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

76.    The individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents described above in ¶¶ 23-57 which contained statements alleged by Plaintiffs to be false or misleading both prior to and

immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b)    awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

(c)    awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

(d)    awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.


Date: March 9, 2020                              Respectfully submitted,


**KENDALL LAW GROUP, PLLC**


*/s/ Joe Kendall*
JOE KENDALL
Texas Bar No. 11260700
3811 Turtle Creek, Suite 1450
Dallas, Texas 75219
(214) 744-3000 phone
(214)-744-3015 fax
jkendall@kendalllawgroup.com

*Counsel for Plaintiff and the*
*Putative Class*


*Additional Counsel*

**BLOCK & LEVITON LLP**
Jeffrey C. Block, (pro hac vice motion to be filed)
Jacob A. Walker (pro hac vice motion to be filed)
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockesq.com
jake@blockesq.com